LASAR MANUFACTURING COMPANY, Respond-
ent v. PELLIGREEN CONSTRUCTION & IN-
VESTMENT COMPANY, Appellant.

St. Louis Court of Appeals, December 31, 1913.

1. BUILDING CONTRACTS: Meaning of Terms: "Furring:" Evi-
dence. A contract for the erection of a school building re-
quired plaintiff to furnish furring for plaster ceilings, metal
plaster partitions and metal lathing, and also declared that
building terms used should have the meaning given them in a
particular dictionary of architecture. The definition of the
word "furring" in such work was: "A light framework or
simple strips, generally of wood, but sometimes of metal, ap-
plied to walls, beams or similar surfaces, to support sheathing,
plaster or other form of finish. Its purpose is either to give
a more even structure for application of such finish, or to form
an air space behind such finish, or to give a semblance of
constructive form, as the imitation of a vault, by means of
some plastic material carried on a frame of the necessary
shape." *Held*, that the definition was itself ambiguous, and hence
it was proper to admit expert evidence to determine whether
such word included steelwork attached to trusses consisting
of strips or bars of steel three inches wide by three-eigths
of an inch thick and weighing approximately three pounds to
the foot, to which other strips of light "channel iron" were
tied to sustain metal lathing and plaster finish. [REYNOLDS,
P. J., dissents.]

2. APPELLATE PRACTICE: Excessive Recovery: Prerequisites
to Review. The question as to the excessiveness of the ver-
dict will not be considered, on appeal, unless complaint of the
amount of the verdict is made in the motion for a new trial.

3. DAMAGES: Building Contracts: Recovery for Partial Perform-
ance: Amount of Recovery. In an action by a subcontractor
who was prevented by the contractor from completely per-
forming his contract, *held* that a verdict for an amount bearing
the same ratio to the total contract price as the amount of
work done by plaintiff bore to the entire work contracted for,
was not excessive.

4. ———: ———: ———: ———. Where a subcontractor was
prevented by the contractor from completely performing his
contract, he could not recover for the work performed in an

amount in excess of the contract rate, although there was evidence that the reasonable value of the work performed was greater than the contract rate.

Appeal from St. Louis City Circuit Court.—*Hon. Geo. H. Shields,* Judge.

AFFIRMED.

*Jos. G. Holliday* and *Geo. L. Neuhoff* for appellant.

(1) If the disputed iorn work in the auditorium, which the subcontractor refused to do, was "furring" within the meaning of the contract between the parties, so that he was not justified in quitting his job, but should have erected the same under his contract, in that event he can recover of the principal contractor, not the reasonable value of his work, regardless of the contract price, but such pro rata portion of the contract price as the amount of labor and materials furnished by him bears to the entire amount he was to furnish under the contract, less, of course, the $2000 already paid him on account. Barcus v. Road Co., 26 Mo. 102; Marsh v. Richards, 29 Mo. 99; Rude v. Mitchell, 97 Mo. 365; Morton v. Forsee, 249 Mo. 409. (2) Where the specifications provide that all building terms shall have the meaning given them in a certain technical dictionary, and the definition given in the dictionary is read in evidence, it becomes the test as to whether certain disputed work is or is not "furring" and the determination of that question cannot properly be left to the mere opinion of experts, regardless of the dictionary. McGregor v. Construction Co., 188 Mo. 611; Commission Co. v. Spencer, 205 Mo. 105; Light & Power Co. v. Young, 146 Ky. 430; Morrison v. Wilson, 30 Cal. 344. (3) A technical definition of "furring" which, by reference thereto in a contract for certain iron work on a building, is made part of

such contract, cannot be lightly brushed aside as ambiguous. (a) Because it states that "furring" may be either of wood or of metal, there being no pretense by either party that wood was anywhere specified or even thought of; (b) nor because there is a statement at the end of the definition, that the term has recently, by extension, been applied also to hollow brick or tile used for the same purposes, there being no pretense by either party that any such materials were anywhere specified or even thought of; (c) nor because the definition on its face is broad enough to include several varieties of furring, some of which might be more appropriate for one, and some for another of the various given purposes for which "furring" is used, provided only that the definition sets out in unambiguous language a test by which it can be decided whether the various portions of the iron work in the specifications are or are not "furring." Farm & Dairy Co. v. Prindle, 249 Mo. 600. (4) If a special finding of fact is unsupported by the evidence and relates to material issues, the proper step for the court is to grant a new trial. It cannot amend its special finding after judgment has been rendered. Freeman v. Hemenway, 75 Mo. App. 617.

*Bishop & Cobbs* for respondent.

Parol evidence was admissible to supply an omission in the written contract which otherwise would be ambiguous and inexplicable, and was admissible to explain the terms of the written instrument, to render them definite and certain. Goodrich v. McCleary, 3 Neb. 123; Chambers v. Ringstaff, 69 Ala. 140; Door v. School District, 40 Ark. 237; Walker v. Wells, 25 Ga. 141; Messick v. Sunderland, 6 Cal. 297.

ALLEN, J.—This is an action to recover a balance claimed to be due plaintiff from defendant for the

reasonable value of certain work performed and materials furnished, after the allowance of a credit of $2000 paid thereon. The suit was instituted against defendant and the latter's surety upon a certain bond given, but the cause proceeded to judgment below against the defendant only, and is appealed here by it.

It appears that the defendant was the general contractor for the erection of the Sumner High School building in the city of St. Louis, under certain plans and specifications furnished by the architect of the school board of said city. On November 16, 1908, plaintiff made the following proposition to defendant:

"Pelligreen Construction Company, City. Gentlemen: We propose to furnish and erect the following work for the Sumner High School, as per plans and specifications, W. B. Ittner, architect, and according to revised plans for the two gymnasiums on third floor. Furring for plaster ceilings, metal plaster partitions and metal lathing, for the sum of thirty-seven hundred and twenty dollars ($3720)."

On May 21, 1909, defendant replied to the above proposition, accepting the same, as follows:

"Your proposition for furnishing and erecting work at the Sumner High School as per your letter of November 16th, is hereby accepted by this firm for the sum of $3720.

"We would be pleased to have you prepare to get this work out for us at your earliest convenience."

The evidence discloses that plaintiff duly entered upon the performance of that part of the work thus contracted to be done by it, and completed the same, to the defendant's satisfaction, with the exception of certain work to be done in the auditorium of said building; that with respect to the latter, a controversy arose between plaintiff and defendant as to whether certain iron framework to be attached to certain beams or trusses in this auditorium was "structural iron,"

or whether it was "furring" within the contemplation of the contract.

It appears that there were four large beams or trusses in the auditorium, extending entirely across the room, which were each intended to be surrounded by a steel framework, and the whole enclosed by plastering. It seems that this steel framework was to consist of strips or bars of steel three inches in width by three-eighths of an inch in thickness and weighing approximately three pounds to the foot, and was to be attached to the beams or trusses by rivets; the holes in the large beams for thus riveting the same having been bored at the shop where such beams were made. It appears that to the steel bars, constituting the framework above mentioned, were to be attached strips of light "channel" or "angle" iron, the same to be tied on with copper wire of a certain size, and that to this, in turn, metal laths were to be tied with like wire to receive the plastering or finish.

The steel framework, to be immediately fastened by rivets to the large beams or trusses, is also referred to in the evidence as a series of brackets that were bent to form a "cornice" which was to extend around the beams. And these "brackets" are also referred to as "hangers."

The plaintiff declined to furnish and install these steel bars forming this framework, which was to be attached immediately to the large beams or trusses, upon the ground that the same was not within the contemplation of its contract; but offered to complete the remainder of its work in the auditorium as soon as the defendant should erect this framework in dispute. The defendant, on the other hand, claimed that the disputed work came within the terms of plaintiff's contract, refused to install it, and later sublet to another contractor the work unfinished by plaintiff in the auditorium.

The plaintiff alleged that the reasonable value of the work performed by it was $3320, gave credit for $2000 paid thereon, and prayed judgment for $1320.

Defendant denied owing plaintiff anything in the premises; and interposed a counterclaim, praying judgment thereon in the sum of $230 for damages alleged to have accrued to it by reason of delay caused by plaintiff's alleged failure to carry out the terms of its contract.

The cause was tried before the court without a jury, a jury having been waived, and resulted in a judgment for plaintiff on its cause of action in the sum of $1182.14, and for plaintiff on defendant's counterclaim.

At the request of appellant, the learned trial judge made a special finding of facts, stating separately his conclusions of law; and therein quite clearly stated the pertinent facts and the conclusions which he reached.

The point in controversy pertains to the use of the word "furring" in the contract. It appears that the specifications referred to in plaintiff's proposal above set out, and which were thereby called into the contract for appropriate use in construing the same, contained the following clause: "Building terms used shall have the meaning respectively set down to them in the revised city building ordinances and the Dictionary of Architecture and Building, by Russell Sturgis."

It was not made to appear that the "revised city building ordinances" throw any light upon the meaning to be given to the word "furring," but it was shown that the word is defined in Russell Sturgis's Dictionary of Architecture and Building as follows:

"Furring.—A light framework or simple strips; generally of wood, but sometimes of metal; applied to walls, beams or similar surfaces to support sheathing, plaster or other form of finish. Its purpose is either to give a more even structure for application of such

finish, or to form an air space behind such finish, or to give a semblance of constructive form, as the imitation of a vault, by means of some plastic material carried on a frame of the necessary shape. By extension in recent times hollow brick or tile used for such purpose."

Appellant's counsel contended below that this dictionary definition was conclusive as to the construction to be placed upon the term in question as employed in the contact, and that it was error for the court to admit, as it did, expert testimony for the purpose of arriving at the meaning to be ascribed to this important word in the contract. And this is the chief point urged upon us for a reversal of the judgment.

There can be no doubt, and it is conceded, that in interpreting the contract with respect to the meaning to be given to the word "furring" employed therein, the definition of such term as found in the dictionary to which the specifications refer is to control; provided such definition is unambiguous and clear, so that by applying the same the matter is altogether free from doubt. The lower court's ruling, however, proceeded upon the ground that such definition was in fact ambiguous and indefinite to the extent that it did not solve the question presented.

Learned counsel for appellant contend that there is no ambiguity in the definition, and say, in effect, that anything is to be regarded as "furring," within the meaning of the contract, which can in any manner be said to be comprehended within said dictionary definition thereof. We think that this does not follow, however, for a reading of the definition given shows that it is intended to comprehend within its terms all forms of construction which may, under any circumstances, be included within the terms "furring;" though it may well be that a form of construction there mentioned is not always to be regarded as "furring."

It is quite apparent that the dictionary definition is so far ambiguous as to leave wholly in doubt the crucial question here involved. The word is there defined as meaning "a light framework or simple strips." We are then told how it is applied, and its purpose or functions; one of the latter being "to give a semblance of constructive form . . . by means of some plastic material carried on a frame of the necessary shape." It is clear that the "framework" or "frame mentioned in the definition is a *light* one. But "light" is a relative term, and when a frame, or framework, would fall within this definition is by no means clear. In the instant case it appears from the evidence that the steel strips or bars to be riveted to the large beams were such as might be termed heavy, when compared with ordinary furring, though light in comparison with the large beams. It appears that they were three inches wide, three-eighths of an inch thick and weighed about three pounds to the linear foot; while the ordinary furring is described as "light channels, T's, or flats," intended to be set on edge a foot or more apart, and weighing about nine ounces per foot. Were we confined to the dictionary definition alone it would be quite doubtful indeed whether framework made of such bars as these could be said to be comprehended within the term, "light framework."

Again, it appears that the "light framework or simple strips," referred to in the definition, are intended "to support sheathing, plaster or other form of finish." If by this it is meant to be immediately attached to and support such plaster or finish, or the lathing which directly carries the latter, then the steel framework here in controversy would appear not to fall within the meaning and purport of the definition; for it is altogether clear that, while this framework ultimately supported the plaster, it did so only by supporting intervening light strips of channel iron, constituting ordinary furring, the latter supporting the

metal lathing upon which the plaster was to be placed. The most favorable view of this question for the plaintiff is that the definition is ambiguous and indefinite as to this.

Certain it is that it is not every metal framework that may directly or indirectly support plastering that can be termed "furring." Here, in fact, the evidence tended, with considerable force, to show that this steel framework which was much heavier than the ordinary furring, and which was intended to be firmly riveted to the large beams, while the ordinary furring was tied on by wire, was not furring, but a part of the structural steel work of the building. The matter was not free from doubt, however, and the court quite properly received the testimony of experts experienced in that class of business in order to arrive at the meaning to be given to the word "furring" in construing the contract. And under all the evidence the court found that the disputed work was not furring, within the meaning of the contract; and concluded that the contract did not require plaintiff to install the same. We perceive no error in this.

The only remaining point pertains to the amount of the verdict. This may be very briefly disposed of, not only for the reason that appellant in its motion for a new trial did not complain of the amount of the verdict, but for the further reason that it appears that the amount thereof bears the same ratio to the total contract price as the amount of work done by plaintiff bears to the entire work contracted for, under the foregoing construction of the contract. There was evidence that the reasonable value of the work per square foot was greater than the contract price; but plaintiff could not recover therefor in excess of the contract rate, and was not permitted so to do.

It follows from what we have said above that plaintiff is not chargeable with a breach of its con-

tract, and that the defendant's counterclaim was properly disallowed.

The judgment should be affirmed. It is so ordered. *Nortoni, J.,* concurs. *Reynolds, P. J.,* dissents, holding that the definition of "furring" given in the dictionary referred to and adopted in the contract, is unambiguous, needed no explanation and binds plaintiff to do the work which it refused to do.